**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

WILLIAM VERNON WILLIAMS,
        *Defendant-Appellant.*

No. 10-30084

D.C. No.
9:09-cr-00020-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
December 6, 2010—Seattle, Washington

Filed March 7, 2011

Before: Robert R. Beezer, Diarmuid F. O'Scannlain, and
Richard A. Paez, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Jessica L. Weltman, Assistant Federal Defender, Missoula, Montana, argued the cause for the defendant-appellant, and

filed the briefs. Anthony Gallagher, the Federal Defender for the District of Montana, and John Rhodes, Assistant Federal Defender, Missoula, Montana, were also on the briefs.

Cyndee L. Peterson, Assistant United States Attorney, Missoula, Montana, argued the cause for the United States, and filed the brief. Michael W. Cotter, the United States Attorney for the District of Montana, was also on the brief.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether sentencing a sex offender to a life term of supervised release constitutes "cruel and unusual" punishment under the Eighth Amendment.

### I

After having his computer seized by his probation officers, William Vernon Williams admitted that it contained child pornography. Williams told the officers that some of the files depicted incest and child rape. A search of his computer confirmed this admission, showing that he had obtained videos of children as young as ten being raped, and had visited websites that depict graphic sexual violence against children. Williams later admitted to having rape fantasies and being attracted to girls between the ages of nine and sixteen. He also stated that he most enjoyed child pornography that showed men raping children. Williams pled guilty to receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2).

This was not the first time that Williams got into trouble for sexual misconduct. In 2000, Williams was convicted in Montana state court of two counts of sexual assault for an incident involving two girls, ages nine and thirteen. The victims were

playing outside their home when Williams approached them and asked for hugs. They said "no" and ran away, but Williams, who is 6′4″, 285 lbs., followed them into their trailer and cornered them in a bedroom. He then kissed the girls on the lips and neck and squeezed their buttocks. Williams received a ten-year sentence for these crimes, but obtained supervised release in 2001. His supervised release was revoked in 2002, however, because he skipped sex offender treatment sessions and obtained employment at a fair frequented by children.

Because of his sexual assault conviction, the district court in the instant case determined that Williams was subject to a mandatory minimum prison term of fifteen years for his child pornography conviction. *See* 18 U.S.C. § 2252A(b)(1). The court noted that the Sentencing Guidelines suggested a term of supervised release of five years to life. *See* U.S.S.G. § 5D1.2(b). The court concluded that a lifetime of supervised release was necessary in order to protect the community from Williams. In making this determination, the court relied on Williams's prior sexual assault conviction and his apparent obsession with child rape, as indicated by the pornography he possessed and his own statements.

During his supervised release, Williams will be required, among other conditions, to meet regularly with his probation officer, to allow the officer to visit his home, to participate in substance abuse and sex offender treatment, to avoid the company of children, to permit unannounced searches of his computer, and to comply with the sex offender registration requirements of any state where he resides. The district court did allow Williams to serve his fifteen-year federal sentence concurrently with the undischarged portion of his Montana sexual assault sentence. Williams timely appealed.

II

On appeal, Williams admits that a challenge to his fifteen-year mandatory prison sentence is foreclosed by Ninth Circuit precedent.[1] He also concedes that his sentence of lifetime supervised release was appropriate under U.S.S.G. § 5D1.2(b). He asserts, however, that a life term of supervised release violates the Eighth Amendment's prohibition against "cruel and unusual punishments," and is substantively unreasonable.

[1] The Supreme Court has held that the Eighth Amendment contains a "narrow proportionality principle." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) (internal quotation marks omitted). This principle "does not require strict proportionality between crime and sentence." *Id.* But it does forbid "extreme sentences that are grossly disproportionate to the crime." *Id.* Still, it is exceptionally difficult for a criminal to show that his sentence is unconstitutionally disproportionate. *See United States v. Ewing*, 538 U.S. 11, 21 (2003) (noting that successful Eighth Amendment challenges in noncapital cases are "exceedingly rare").

A

[2] There are two ways to succeed on a proportionality claim. The first challenges the sentence as disproportionate "given all the circumstances in a particular case." *Graham*, 130 S. Ct. at 2021. In assessing the proportionality of particular sentences, we first compare the gravity of the offense to the severity of the sentence. *Id.* at 2022. "In the rare case in which this threshold comparison leads to an inference of gross disproportionality the court should then compare the defendant's sentence with the sentences received by other offenders

---

[1] *See United States v. Sinerius*, 504 F.3d 737, 744-45 (9th Cir. 2007). Despite this concession, Williams still objects to the fifteen-year mandatory minimum in order to preserve the objection.

in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (internal quotation marks omitted).

[3] Williams does not come close to passing this test. Williams committed very serious crimes: sexually assaulting a nine-year-old girl, sexually assaulting a thirteen-year-old girl, and numerous instances of receiving child pornography. Moreover, although supervised release limits a criminal's liberty and privacy, it is a punishment far less severe than prison. *Cf. Graham*, 130 S. Ct. at 2027 (noting that "life without parole is the second most severe penalty permitted by law" because it "deprives the convict of the most basic liberties" and "means denial of hope" (internal quotation marks omitted)). A lifetime of supervised release is not inappropriate for, much less grossly disproportionate to, the grave infractions which Williams committed. Indeed, the Supreme Court has upheld far tougher sentences for less serious crimes. *See Lockyer v. Andrade*, 538 U.S. 63 (2003) (fifty years to life for stealing $150 worth of videotapes under California's three-strikes law); *Ewing*, 538 U.S. 11 (twenty-five years to life for the theft of a few golf clubs under California's three-strikes law); *Harmelin v. Michigan*, 501 U.S. 957 (1991) (life without parole for possessing a large quantity of cocaine); *Rummel v. Estelle*, 445 U.S. 263 (1980) (life with the possibility of parole for obtaining money by false pretenses, the defendant's third nonviolent felony); *Hutto v. Davis*, 454 U.S. 370 (1982) (forty years for possession of marijuana with intent to distribute and distribution of marijuana).

[4] A life term of supervised release is particularly appropriate for sex offenders given their high rate of recidivism. *See* H.R. Conf. Rep. No. 107-527, at 2 (noting that "sex offenders are four times more likely than other violent criminals to recommit their crimes," and that their "recidivism rate [does] not appreciably decline as offenders age"). Williams is himself a recidivist and has admitted to having rape fantasies, a factor which the district court correctly found to be indica-

tive of future dangerousness. *See Rummel*, 445 U.S. at 276 (noting that states have an interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society"). It is therefore not at all excessive to require Williams to comply with such supervised release conditions as attending sex offender treatment, avoiding the company of children, and meeting regularly with a probation officer. *See United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005) ("[A] lifetime term of supervised release is not grossly disproportionate to [the defendant's] child pornography offenses . . . .").

**[5]** Accordingly, we conclude that a life term of supervised release is not unconstitutionally disproportionate given the circumstances of this case.

## B

**[6]** The second way to mount a proportionality challenge is to show that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender. Until last Term, the Supreme Court had declared a sentence categorically disproportionate only where the penalty was death. *See Kennedy v. Louisiana*, 554 U.S. 407 (2008) (prohibiting the death penalty for nonhomicide crimes); *Roper v. Simmons*, 543 U.S. 551 (2005) (prohibiting the death penalty for offenders who committed their crimes before the age of eighteen); *Atkins v. Virginia*, 536 U.S. 304 (2002) (prohibiting the death penalty for the mentally retarded). Last Term, however, the Court held that juvenile offenders cannot be sentenced to life in prison without parole for nonhomicide crimes. *See Graham*, 130 S. Ct. at 2011. In so holding, the Court stressed that life imprisonment without parole is "the second most severe penalty permitted by law." *Id.* at 2027 (internal quotation marks omitted).

**[7]** When considering categorical challenges to classes of sentences, courts look to "objective indicia of society's standards . . . to determine whether there is a national consensus against the sentencing practice at issue," and to the court's "own independent judgment." *Id.* at 2022 (internal quotation marks omitted).

**[8]** Here, "objective indicia" suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common. According to the United States Sentencing Commission, in the last five years, federal courts have sentenced 1875 defendants convicted of child pornography and child prostitution crimes to lifetime supervised release. *See* U.S. Sentencing Comm'n, *Federal Offenders Sentenced to Supervised Release* 58-59 (July 2010), www.ussc.gov/general/20100722_Supervised_Release.pdf. By way of comparison, in banning the sentence of life without parole for juvenile nonhomicide offenders, the Supreme Court noted that there were then just 123 people in the county serving such sentences. *See Graham*, 130 S. Ct. at 2024. Further, the percentage of federal sex offenders receiving life terms of supervised release is increasing, climbing from 9.3 percent in 2005, to 20.5 percent in 2009. *See* U.S. Sentencing Comm'n, *supra*, at 59.

**[9]** In exercising "independent judgment," the Supreme Court has instructed lower courts to "consider[ ] whether the challenged sentencing practice serves legitimate penological goals." *Graham*, 130 S. Ct. at 2026. Rehabilitation and incapacitation are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again. Supervised release can further the end of rehabilitating sex offenders. For instance, in this case, the express conditions of supervised release will require Williams to receive sex offender treatment and to avoid situations where he may be tempted to offend again. Relatedly, supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may

be able to detect problems before they result in irreparable harm to innocent children.

[10] Accordingly, we conclude that life terms of supervised release are not categorically disproportionate for sex offenders.

## III

Williams also asserts that a life term of supervised release is substantively unreasonable.

Appellate courts review the substantive reasonableness of sentences for abuse of discretion, and "must give due deference to the district court's decision." *Gall v. United States*, 552 U.S. 38, 51 (2007). This standard is particularly deferential where, as here, the court is reviewing a within-Guidelines sentence. *See Rita v. United States*, 551 U.S. 338, 347-48 (2007). This special deference reflects the fact that when a district court imposes a within-Guidelines sentence, "*both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Id.* at 347. Indeed, "[t]hat double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.*; *see also United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (en banc) ("We recognize that a Guidelines sentence will usually be reasonable . . . ." (internal quotation marks omitted)).

[11] Here, lifetime supervised release is reasonable given the seriousness of Williams' offenses and the likelihood that he will offend again. The sexual exploitation and abuse of children are unspeakably horrendous crimes. Moreover, those who commit such crimes once are likely to commit them again. *See* H.R. Conf. Rep. No. 108-66, at 49-50 (noting that "the perpetrators of child sexual abuse crimes" often have "deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison").

Accordingly, the United States Sentencing Commission recommends the maximum term of supervised release for sex offenses such as receipt of child pornography, *see* U.S.S.G. § 5D1.2(b)(2) (Policy Statement), and several courts of appeals, including our own, have held that life terms of supervised release are reasonable where the defendant was convicted of receipt or possession of child pornography, *see, e.g.*, *United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008); *United States v. Gonzalez*, 445 F.3d 815, 820 (5th Cir. 2006).

We conclude that a life term of supervised release is reasonable in this case.

## IV

For the foregoing reasons, the district court did not err in sentencing Williams to a fifteen-year sentence, followed by a life term of supervised release.

AFFIRMED.