(336 P.3d 912)

No. 110,226

STATE OF KANSAS, *Appellee*, v. ABIGAIL REED, *Appellant*.

Opinion filed October 31, 2014.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Tamara S. Hicks*, assistant court attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

PIERRON, J.: Abigail Reed appeals the sentence entered by the district court following the State's motion to correct an illegal sentence. Reed argues that once the court ordered the sentence following the revocation of her probation, the court had no jurisdiction to modify the sentence. Additionally, Reed argues her lifetime postrelease sentence was cruel and unusual punishment based on her conviction for indecent solicitation of a child. We affirm.

On May 16, 2012, the State charged Reed with criminal sodomy, aggravated indecent liberties with a child, and indecent solicitation of a child. Reed pled guilty to indecent solicitation of a child. She fell within the presumptive probation portion of the sentencing grid. The court sentenced Reed to an incarceration sentence of 18 months and then ordered probation (intensive supervision) for 24 months. The court also ordered a postrelease supervision term of 24 months.

On January 14, 2013, the State moved to revoke Reed's probation for violating curfew, failing to attend meetings, and failing to maintain a residence. The court ordered Reed to serve her 18-month prison sentence and a 24-month period of postrelease supervision. On February 14, 2013, the State filed a motion to correct an illegal sentence, arguing Reed was statutorily required to serve a term of lifetime postrelease supervision. After a full hearing, the district court granted the State's motion and ordered Reed to serve a lifetime of postrelease supervision. Reed appeals.

We first address the issue of whether the district court had jurisdiction to modify Reed's sentence.

Reed argues the sentence imposed on her after the revocation of her probation was a legal sentence, effective upon pronouncement from the bench, and the court did not have jurisdiction to modify that sentence. She contends that although Kansas law requires anyone convicted of a sexually violent crime to be subjected

to lifetime postrelease supervision, Kansas law also authorizes the district court to impose a lesser sentence when it revokes a defendant's probation. She argues this is what the court did here and, therefore, the court had no jurisdiction to later modify the term of postrelease supervision at the State's request.

Whether a sentence is illegal is a question of law over which we have unlimited review. *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). K.S.A. 22-3504(1) allows the court to correct an illegal sentence at any time. An illegal sentence includes one that does not conform to the applicable statutory provision in either the character or the term of authorized punishment. *State v. Lawson*, 296 Kan. 1084, 1099, 297 P.3d 1164 (2013). Once the district court pronounces a legal sentence from the bench, it does not have jurisdiction to modify that sentence absent statutory language allowing a modification. *State v. McKnight*, 292 Kan. 776, 779, 257 P.3d 339 (2011); see *State v. Guder*, 293 Kan. 763, 766, 267 P.3d 751 (2012).

Reed asks us to interpret the interaction of two different statutes in the Kansas Code of Criminal Procedure: (1) K.S.A. 2011 Supp. 22-3716(b), which provides, in pertinent part, that once a probation violation has been established, the district court "may require the defendant to serve the sentence imposed, or any lesser sentence"; and (2) K.S.A. 2011 Supp. 22-3717(d)(1)(G), which states: "[P]ersons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." Indecent solicitation of a child—Reed's crime of conviction—is categorized as a sexually violent crime under K.S.A. 2011 Supp. 22-3717(d)(2)(F).

Reed acknowledges she should have been sentenced to lifetime postrelease supervision at her original sentencing. Indeed, when a defendant has been convicted of one of the statutorily defined sexually violent offenses, the district court does not have discretion to ignore the lifetime postrelease supervision requirement of K.S.A. 2011 Supp. 22-3717(d)(1)(G). *State v. Ballard*, 289 Kan. 1000, 1012, 218 P.3d 432 (2009); *State v. Baber*, 44 Kan. App. 2d 748, 753-54, 240 P.3d 980 (2010), *rev. denied* 296 Kan. 1131 (2013). A

district court's failure to comply with the statute results in an illegal sentence. 44 Kan. App. 2d at 754. The sentencing court was required to sentence Reed to lifetime postrelease supervision in this case. Because it failed to do so at the original sentencing hearing, Reed's original sentence was illegal.

Nevertheless, Reed contends that upon revocation of her probation the district court applied K.S.A. 2011 Supp. 22-3716(b) to impose a lesser sentence, which in this case was a shorter postrelease supervision term. Thus, she contends, the original illegal sentence became legal upon the revocation of her probation because the district court had the discretion to sentence her to a lesser period of postrelease supervision at that point.

Unfortunately for Reed, this is not what happened. At the probation revocation hearing, the district court revoked Reed's intensive supervision and ordered her "to serve the balance of the sentence that was imposed upon you at the time of sentencing." However, because Reed was on presumptive probation and she had committed technical violations of her probation, the court and the parties discussed whether Reed's postrelease supervision period remained intact upon revocation. There was no discussion on the length of Reed's postrelease supervision, just whether it remained intact.

Based on the record, the district court ordered Reed to serve her original illegal sentence, not a lesser legal one. Thus, we do not need to examine the interplay of the "any lesser sentence" provision of K.S.A. 2011 Supp. 22-3716(b) and the mandatory lifetime postrelease supervision for sexually violent offenses provision of K.S.A. 2011 Supp. 22-3717(d)(1)(G).

Reed argues her case is similar to *McKnight*. In *McKnight*, the defendant pled no contest to a drug charge which fell into a border box on the sentencing grid. McKnight received a legal sentence that was suspended in favor of probation. His probation was later revoked, and the district court modified his underlying sentence after the revocation to omit any postrelease supervision based on a misunderstanding of the rules for border box sentences. The State later moved the court to correct the illegal sentence. Our Supreme Court held that the modified sentence, though modified

based on a mistake of law, was a legal sentence and the court did not have jurisdiction to modify it later. 292 Kan. at 783.

In *McKnight*, the district court imposed a lesser sentence upon revocation of the defendant's probation. But in our present case, the district court simply ordered Reed to serve her original sentence. *McKnight* does not apply.

On the contrary, *Ballard* is instructive. There, Ballard pled no contest to a charge of aggravated indecent liberties with a child and was sentenced to 55 months' imprisonment and 36 months' postrelease supervision. At a hearing 2 weeks later, the district court modified Ballard's sentence by imposing mandatory lifetime postrelease supervision. Ballard argued on appeal that the original sentence was legal and therefore not modifiable after pronouncement because K.S.A. 2006 Supp. 22-3717(d)(1)(A) required 36 months' postrelease supervision for nondrug severity level 1 through 4 crimes, which would include his crime of conviction. Ballard acknowledged he committed a sexually violent crime and acknowledged that K.S.A. 2006 Supp. 22-3717(d)(1)(G) mandated lifetime postrelease supervision for sexually violent crimes, but he argued either K.S.A. 2006 Supp. 22-3717(d)(1)(A) or (G) could apply to his case and therefore a postrelease term under either statute would be legal.

The Kansas Supreme Court rejected Ballard's argument, in part because he was subject to mandatory lifetime postrelease supervision pursuant to K.S.A. 2006 Supp. 22-3717(d)(1)(G). Because Ballard's original sentence was based on the wrong statute and was therefore illegal, the district court had jurisdiction to modify it after pronouncement. 289 Kan. at 1012.

*Ballard* controls. Reed's original sentence was illegal. The district court then reimposed an illegal sentence rather than imposing a lesser one at the probation revocation hearing. A revocation of probation may lead to the imposition of a lesser sentence. However, the new sentence cannot be illegal. Thus, the district court had jurisdiction later to correct Reed's illegal sentence under K.S.A. 22-3504(1), and the district court did not err in doing so.

We also need to address the question of whether Reed's sentence violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

Reed asserts that lifetime postrelease supervision for a conviction of indecent solicitation of a child is categorically disproportionate in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. She bases her argument on the assertions that indecent solicitation (1) does not involve the victim and the offender engaging in any sexual act, and (2) the victim was 14 years old but less than 16 years old. In her categorical disproportionate analysis, Reed argues there is a national consensus against lifetime postrelease supervision and the courts can exercise independent judgment to find that none of the penological goals of retribution, deterrence, incapacitation, and rehabilitation are met with Reed's harsh sentence.

Regarding § 9 of the Kansas Constitution Bill of Rights, our Supreme Court has adopted the three-part test from *State v. Freeman*, 223 Kan. 362, Syl. ¶ 2, 574 P.2d 950 (1978), to determine whether a sentence of lifetime postrelease supervision is cruel or unusual punishment. *State v. Mossman*, 294 Kan. 901, Syl. ¶ 4, 281 P.3d 153 (2012). In doing so, we consider: (1) the nature of the offense and the character of the offender in regard to the degree of danger presented to society; (2) the comparison of the punishment at issue with other punishments in Kansas for more serious crimes; and (3) the comparison of the penalty with punishments in other jurisdictions for the same offense. 294 Kan. at 908; *Freeman*, 223 at 367.

Reed's § 9 argument consisted of only quoting the state constitutional language of § 9 of the Kansas Constitution Bill of Rights prohibiting cruel or unusual punishment, followed by the court's interpretation in *State v. McDaniel & Owens*, 228 Kan. 172, 183, 612 P.2d 1231 (1980) (quoting *Freeman*, 223 Kan. at 367), that such punishment " 'shocks the conscience and offends fundamental notions of human dignity.' " Reed also surveyed nationwide postrelease supervision laws for sexual offenses—in line with the third *Freeman* factor—but only for the purpose of arguing that there is a national consensus against lifetime postrelease supervision for this class of offense. Reed also briefly argued her postrelease sentence was harsher than what someone would receive for

second-degree murder. Reed made no attempt to demonstrate the *Freeman* test was met here.

The Kansas Supreme Court recently declined to review a defendant's § 9 claim when the defendant failed to argue the *Freeman* factors and only mentioned *Freeman* in the context of the standard of review. See *State v. Williams*, 298 Kan. 1075, 1083-84, 319 P.3d 528 (2014). When a litigant fails to adequately brief an issue, it is deemed abandoned. *State v. Rojas-Marceleno*, 295 Kan. 525, 543, 285 P.3d 361 (2012).

The *Williams* court further noted that because the *Freeman* test involves both legal and factual inquiries, appellate courts cannot consider § 9 claims in the absence of district court factfinding and analysis. 298 Kan. at 1084. Here, at the hearing on the State's motion to correct an illegal sentence, Reed's counsel argued lifetime postrelease supervision would be cruel and unusual punishment considering Reed's age and the age and consent of the victim. Counsel argued lifetime postrelease should be for the "hardcore sexual predators in our society." The district judge stated he was going to follow the statutes and caselaw and was required to impose lifetime postrelease supervision. There were no findings of fact made by the district court to aid us in our review of the *Freeman* factors.

Supreme Court Rule 165 (2013 Kan. Ct. R. Annot. 265) requires the district court to make adequate findings of fact and conclusions of law on matters submitted to it without a jury. A defendant who wishes to lodge a constitutional challenge to a sentencing statute must make sure the district judge makes adequate findings and conclusions, even if it means filing a motion invoking the judge's duty under Rule 165. *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009). Reed's failure to pursue her § 9 claim with the district court forecloses our appellate review of the issue.

Reed's sentence was not categorically disproportionate under the Eighth Amendment either. In *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the United States Supreme Court set·the standard for Eighth Amendment proportionality challenges. It divided the challenges into two classifications: (1) those challenging the length of a term-of-years sentence given

all the circumstances of a particular claim, and (2) those in which the Court implements the proportionality standards according to certain categorical restrictions. 560 U.S. at 59. Claims in the first classification are inherently fact-specific and cannot be raised on appeal absent findings of fact and conclusions of law from the district court. *State v. Gomez*, 290 Kan. 858, 864, 235 P.3d 1203 (2010). On the other hand, a categorical constitutional analysis under the Eighth Amendment involves questions of law and may be raised on appeal in the absence of any factual findings from the district court. *State v. Ruggles*, 297 Kan. 675, 679, 304 P.3d 338 (2013) (quoting *Mossman*, 294 Kan. at 925; citing *Gomez*, 290 Kan. at 866). This court has unlimited review of questions of law. *Mossman*, 294 Kan. at 925.

Because the district court did not make findings of facts or conclusions of law upon which this court could rely for appellate purposes, Reed's Eighth Amendment challenge to the lifetime postrelease supervision portion of her sentence can only be addressed under the second classification—as a purely legal, categorical proportionality challenge. The United States Supreme Court has identified three subcategories of categorical constitutional challenges: (1) those considering the nature of the offense, (2) those considering the characteristics of the offender, and (3) those that combine the first two subcategories by considering a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes. *Graham*, 560 U.S. at 60-61.

Reed's categorical constitutional argument asserts that the Eighth Amendment categorically prohibits the imposition of lifetime postrelease for a sex offense in which the offender and the victim do not engage in sexual acts and the victim is 14 or more years of age but less than 16 years of age. This argument appears to fall into subcategory 3, which looks at both the nature of the offense and the characteristics of a class of offenders.

The United States Supreme Court has tended to categorize classes of offenders by broad characteristics, such as defendants under the age of 18 or those with low range intellectual functioning. See *Mossman*, 294 Kan. at 928-29. The record here indicates Reed was 18 years old at the time she committed these offenses. She there-

fore lacks standing to make the argument that lifetime postrelease supervision is unconstitutional as applied to offenders under the age of 18. See *State v. Coman*, 294 Kan. 84, 90-91, 273 P.3d 701 (2012) (holding that an offender convicted under the bestiality portion of the criminal sodomy statute does not have standing to challenge the constitutionality of the portion of the statute that criminalizes homosexual conduct); *State v. Thompson*, 221 Kan. 165, 172, 558 P.2d 1079 (1976) (holding that unconstitutional government action can only be challenged by a person directly affected; it cannot be challenged by one invoking the rights of third parties).

Reed's arguments regarding the nature of the offense hinge on the fact that the offender and the victim did not engage in sexual acts and the victim is 14 or more years of age but less than 16 years of age. But even if those facts had been established, we would not narrow our categorical analysis to that degree, as shown by the Kansas Supreme Court's decision in *Mossman*.

In *Mossman*, the defendant categorically challenged the constitutionality of lifetime postrelease supervision for aggravated indecent liberties with a child. Mossman asked the court to limit the range of crimes considered to those involving sex with a child who is 14 or 15 when the crime is committed without any element of force, coercion, prostitution, or pornography. While the United States Supreme Court has narrowed the categories somewhat in reference to the nature of a crime, such as the rape of an adult where the age of the victim was not an element, the Kansas Supreme Court noted that it had never refined its categories to the degree requested by the defendant. Thus, it conducted its analysis using Mossman's offense—aggravated indecent liberties with a child—as the nature of offense. It did so because Mossman's requested categorization was "so case-specific" it tended to obliterate the distinction between a case-specific analysis and a categorical one. 294 Kan. at 928.

*State v. Cameron*, 294 Kan. 884, 281 P.3d 143 (2012), involved the use of lifetime postrelease supervision for a man convicted of aggravated indecent solicitation of a child. Cameron solicited sex acts with a 12-year-old female victim. He sought to describe this class of offenders as those who committed " 'a sex offense, not

involving pornography, where the offender and the victim do not engage in physical conduct, much less a physical sexual act.' " 294 Kan. at 896. The court noted that Cameron had touched his victim but, regardless, it found there was no "basis for considering a classification of an offense that is any narrower than the crime of conviction—aggravated indecent solicitation of a child." 294 Kan. at 897.

Reed's conviction was for indecent solicitation of a child. K.S.A. 2011 Supp. 21-5508(a)(1) defines this offense as "enticing, commanding, inviting, persuading or attempting to persuade a child 14 or more years of age but less than 16 years of age to . . . [c]ommit or to submit to an unlawful sexual act."

Much like *Mossman* and *Cameron*, Reed asks us to narrow the nature of the offense so as to narrow the crime of her conviction to the point that her argument is no longer a categorical argument, but one based on specific facts which have never been determined by the district court. In considering Reed's challenge to lifetime postrelease supervision, the district court was never asked to determine the consensual nature of the act or the nature of the solicitation. Because Reed entered a plea of no contest to these offenses, she did not admit to the facts as proffered by the State at her plea hearing. Accordingly, we will consider the nature of the offense to be Reed's offense of conviction—indecent solicitation of a child—and refrain from restricting the category further. See *Williams*, 298 Kan. at 1087 (finding that the category of offense described as " 'crimes involving possession of pornographic images [of a child] under age 18' " did not narrow the offense of sexual exploitation of a child as defined by the legislature); *Cameron*, 294 Kan. at 897.

Pursuant to *Graham*, when considering whether lifetime postrelease supervision is categorically unconstitutional as applied to a term-of-years sentence for those convicted of indecent solicitation of a child,

"[t]he Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's

own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citation omitted.]" 560 U.S. at 61.

Community consensus is entitled to great weight but is not itself determinative of the cruel and unusual issue raised here. *Williams*, 298 Kan. at 1087. As noted in *Mossman*, the task of interpreting the Eighth Amendment categorical analysis required this court to consider the culpability and characteristics of the offender in light of the crime and to examine the severity of the punishment at issue, including whether the sentence serves legitimate penological interests. 294 Kan. at 929. Retribution, deterrence, incapacitation, and rehabilitation are legitimate penological interests. *Graham*, 560 U.S. at 71.

Reed argues there is a national consensus against lifetime postrelease supervision for sex offenses, noting that only five states, including Kansas, impose lifetime postrelease supervision for this "class of offenses." Kansas courts have consistently relied on *United States v. Williams*, 636 F.3d 1229 (9th Cir.), *cert. denied* 132 S. Ct. 188 (2011), when considering categorical challenges to sentences for sex offenses. See *Williams*, 298 Kan. at 1088-90; *Mossman*, 294 Kan. at 929-30; *Cameron*, 294 Kan. at 897-98. In *Williams*, the defendant pled guilty to receipt of child pornography. Analyzing the defendant's constitutional challenge to his sentence pursuant to *Graham*, the court found that "objective indicia" suggests society is comfortable with lifetime supervised release for sex offenders, noting that such sentences are common. 636 F.3d at 1233-34.

In *Mossman*, the Kansas Supreme Court surveyed other state laws imposing lifetime postrelease supervision on those convicted of offenses similar to the Kansas law of aggravated indecent liberties with a child. 294 Kan. at 917-20. The *Mossman* court stated:

"[I]t seems fair to say that less than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease super-

vision for crimes such as Mossman's, and we are not aware of any court that has found lifetime postrelease supervision to be cruel and unusual punishment." 294 Kan. at 920.

Reed compares her crime to more serious off-grid offenses and points out that individuals convicted of those offenses do have the option to be released or discharged from parole. In *Cameron* and *Mossman*, our Supreme Court compared the punishment for the crimes at issue in those cases with the punishments for other crimes in Kansas and then compared the penalties imposed by other states for similar offenses. *Cameron*, 294 Kan. at 892-94; *Mossman*, 294 Kan. at 912-21. The court in *Cameron* specifically rejected the arguments comparing lifetime postrelease supervision to sentences for crimes such as second-degree murder, noting that lifetime postrelease supervision, although resulting in a lengthy cumulative sentence, "is not as harsh a punishment as imprisonment and is aimed at safely integrating a sex offender into society and protecting the public." *Cameron*, 294 Kan. at 896; see *Mossman*, 294 Kan. at 911-12.

The Kansas Supreme Court has not yet changed course on this portion of its analysis. See *Williams*, 298 Kan. at 1088-90; *Mossman*, 294 Kan. at 929-30; *Cameron*, 294 Kan. at 897-98. Because Kansas considers indecent solicitation of a child to be a sexually violent offense, Reed's crime of conviction falls squarely into this analysis. We are duty bound to follow Kansas Supreme Court precedent regarding the imposition of lifetime postrelease supervision following convictions of sexually violent crimes. *State v. Capps*, No. 107, 361 2013 WL 1444501, *2 (Kan. App.) (unpublished opinion), *rev. denied* 291 Kan. 1249 (2013). That duty applies here.

The Kansas Supreme Court has also looked to the Ninth Circuit Court of Appeals for guidance on whether lifetime postrelease supervision serves the legitimate penological goals of retribution, deterrence, incapacitation, and rehabilitation for the second part of this analysis. The *Williams* court found:

"Rehabilitation and incapacitation are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again. Supervised release can further the end of rehabilitating sex offenders. For instance, in this case, the express conditions of supervised release

will require [the defendant] to receive sex offender treatment and to avoid situations where [the defendant] may be tempted to offend again. Relatedly, supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children." 636 F.3d at 1234.

Our Supreme Court has found this conclusion applies equally to those sentenced in Kansas for sex offenses. See *Williams*, 298 Kan. at 1089; *Mossman*, 294 Kan. at 930; *Cameron*, 294 Kan. at 898. The Ninth Circuit's analysis in *Williams* applies equally to Reed's case as well. Lifetime postrelease supervision for Reed's offense serves the valid penological objectives of deterring such conduct and in incapacitating and rehabilitating the offender.

Lifetime postrelease supervision for the offense of indecent solicitation of a child is not categorically disproportionate and, therefore, is not cruel and unusual punishment under the Eighth Amendment.

Affirmed.