NOT DESIGNATED FOR PUBLICATION

No. 114,991

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY MICHAEL RODRIGUEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed December 2, 2016. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MCANANY and STANDRIDGE, JJ.

*Per Curiam*: Anthony Michael Rodriguez appeals the district court's decision to grant the State's motion to correct an illegal sentence and increase his postrelease supervision from a term of 24 months to lifetime. Rodriguez argues that once the court revoked his probation and imposed an underlying sentence, the court lacked jurisdiction to later increase it. Alternatively, Rodriguez argues that lifetime postrelease supervision constitutes cruel and unusual punishment in violation of his constitutional rights. But the district court had jurisdiction to modify the term of postrelease supervision imposed because it was an illegal sentence. As to Rodriguez' alternative argument, we find substantial competent evidence supports the district court's conclusion that lifetime

1

postrelease supervision in this case is constitutional under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. For these reasons, we affirm the district court's judgment.

FACTS

On January 9, 2009, Rodriguez pled guilty to one count of indecent liberties with a child, a severity level 5 person felony. At sentencing, the district court granted Rodriguez' motion for departure and sentenced him to 36 months' probation with an underlying prison term of 120 months and 24 months' postrelease supervision. The district court judge subsequently revoked Rodriguez' probation in September 2010 and ordered that he serve his original prison sentence, stating, "I do order you to serve the balance of your sentence of 120 months in prison." This ruling also maintained the 24-month postrelease supervision portion of the sentence.

The State later discovered that the postrelease supervision period Rodriguez had been ordered to serve was incorrect under K.S.A. 22-3717(d)(1)(G), which provides that offenders convicted of a sexually violent crime are subject to mandatory lifetime postrelease supervision. Because the crime of indecent liberties with a child is a "sexually violent crime" under K.S.A. 22-3717(d)(2)(B), that provision applied. On June 4, 2015, the State filed a motion to correct an illegal sentence asking the district court to correct Rodriguez' sentence by issuing an order of lifetime postrelease supervision.

Rodriguez filed a brief objecting to lifetime postrelease supervision, arguing that such a punishment is cruel and unusual in violation of his rights under the Eighth Amendment and § 9 of the Kansas Constitution Bill of Rights. The State responded, arguing that the sentence was not unconstitutional. The district court held that "based on the facts of this case, that the standard of lifetime postrelease supervision is not

2

unconstitutional." The court therefore granted the State's motion to correct an illegal sentence and resentenced Rodriguez to lifetime postrelease supervision.

ANALYSIS

*Jurisdictional claim*

On appeal, Rodriguez claims the district court did not have jurisdiction to resentence him to lifetime postrelease supervision because the sentence of 24 months' postrelease supervision was legal when it was imposed by the district court at the 2010 revocation hearing and the court does not have jurisdiction to modify a legal sentence. The State disagrees, arguing the 24-month term was illegal because K.S.A. 22-3717(d)(1)(G) mandates lifetime postrelease supervision for any offender convicted of a sexually violent offense, which includes indecent liberties with a child under K.S.A. 22-3717(d)(2)(B). As such, the State maintains the district court properly corrected the illegal sentence to lifetime postrelease supervision.

Whether a sentence is illegal is a question of law over which this court has unlimited review. *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). If the 24-month postrelease sentence was legally imposed, the district court would not have jurisdiction to increase the legally imposed sentence. See *State v. Ballard*, 289 Kan. 1000, 1010, 218 P.3d 432 (2009) ("[C]ourts generally do not have jurisdiction to increase legally imposed sentences."). However, if Rodriguez' sentence was illegal, it may be corrected "at any time" under K.S.A. 22-3504(1). An illegal sentence includes one that does not conform to the applicable statutory provision in either the character or the term of authorized punishment. *State v. Lawson*, 296 Kan. 1084, 1099, 297 P.3d 1164 (2013).

Notably, Rodriguez readily acknowledges he was convicted of a "sexually violent crime" under K.S.A. 22-3717(d)(2)(B) and subject to mandatory lifetime postrelease

3

supervision pursuant to K.S.A. 22-3717(d)(1)(G). In turn then, Rodriguez necessarily acknowledges that—when the district court granted his motion for departure and sentenced him to probation in 2009—his underlying sentence of 24 months' postrelease supervision was illegal in that it did not conform to the applicable statutory provision in terms of the authorized punishment. But Rodriguez maintains this fact is not fatal to his claim that the district court did not have jurisdiction to modify his sentence in 2015 when the State filed its motion. Rodriguez argues that when his probation was revoked in 2010, the district court imposed a new, legal sentence pursuant to K.S.A. 22-3716(b), which permits a court to "require the defendant to serve the sentence imposed, or any lesser sentence." Specifically, Rodriguez claims the court imposed the 24-month postrelease sentence as a "lesser sentence" than the lifetime postrelease sentence mandated by K.S.A. 22-3717(d)(1)(G); thus, the 24-month postrelease sentence is a legal sentence that the district court could not thereafter modify.

Kansas courts have repeatedly rejected Rodriguez' interpretation of the interplay between K.S.A. 22-3717(d)(1)(G) and K.S.A. 22-3716(b) where, like here, the court imposes the original sentence, not a new or modified sentence. See, *e.g.*, *State v. Reed*, 50 Kan. App. 2d 1133, 1136, 336 P.3d 912 (2014), *rev. denied* 302 Kan. 1019 (2015); *State v. Lobmeyer*, No. 110,209, 2014 WL 3907097, at *3 (Kan. App. 2014) (unpublished opinion) ("[T]he district court ordered Lobmeyer to serve his original illegal sentence, not a lesser legal one. Thus, we do not need to examine the interplay of the 'any lesser sentence' provision of K.S.A. 2010 Supp. 22-3716[b] and the mandatory lifetime postrelease supervision for sexually violent offenses provision of K.S.A. 2010 Supp. 22-3717[d][1][G]."), *rev. denied* 302 Kan. 1017 (2015); see also *Ballard*, 289 Kan. at 1012 (sentence was based on wrong statute and was therefore illegal, district court had jurisdiction to modify it after pronouncement); *State v. Baber*, 44 Kan. App. 2d 748, 754, 240 P.3d 980 (2010) ("Where a defendant is subject to K.S.A. 22-3717[d][1][G], he or she is to be sentenced under that subsection. Any other sentence imposed is illegal.").

4

A panel of this court addressed the same issue in *Reed*. In that case, Reed pled guilty to indecent solicitation of a child, for which the court sentenced her to 24 months' probation with an underlying 18-month prison sentence and 24 months' postrelease supervision. The court subsequently revoked Reed's probation and sentenced her to serve her original sentence. The State moved to correct an illegal sentence, and the district court granted the motion, holding that Reed was statutorily required to serve a term of lifetime postrelease supervision. On appeal, Reed made the same argument that Rodriguez makes here: her sentence upon probation revocation was a legal "lesser sentence" under K.S.A. 2011 Supp. 22-3716(b) and, therefore, the district court had no jurisdiction to resentence her to lifetime postrelease supervision. The *Reed* court rejected her interpretation, holding:

> "[W]hen a defendant has been convicted of one of the statutorily defined sexually violent offenses, the district court does not have discretion to ignore the lifetime postrelease supervision requirement of K.S.A. 2011 Supp. 22-3717(d)(1)(G). *State v. Ballard*, 289 Kan. 1000, 1012, 218 P.3d 432 (2009); *State v. Baber*, 44 Kan. App. 2d 748, 753-54, 240 P.3d 980 (2010), *rev. denied* 296 Kan. 1131 (2013). A district court's failure to comply with the statute results in an illegal sentence. 44 Kan. App. 2d at 754. . . .
>
> "Nevertheless, Reed contends that upon revocation of her probation the district court applied K.S.A. 2011 Supp. 22-3716(b) to impose a lesser sentence, which in this case was a shorter postrelease supervision term. Thus, she contends, the original illegal sentence became legal upon the revocation of her probation because the district court had the discretion to sentence her to a lesser period of postrelease supervision at that point.
>
> "Unfortunately for Reed, this is not what happened. At the probation revocation hearing, the district court revoked Reed's intensive supervision and ordered her 'to serve the balance of the sentence that was imposed upon you at the time of sentencing.' . . .
>
> "Based on the record, the district court ordered Reed to serve her original illegal sentence, not a lesser legal one. Thus, we do not need to examine the interplay of the 'any lesser sentence' provision of K.S.A. 2011 Supp. 22-3716(b) and the mandatory lifetime postrelease supervision for sexually violent offenses provision of K.S.A. 2011 Supp. 22-3717(d)(1)(G)." *Reed*, 50 Kan. App. 2d at 1135-36.

5

Like in *Reed*, the district court judge here ordered Rodriguez to serve his original term at the probation revocation hearing, stating, "I do order you to serve the balance of your sentence of 120 months in prison." The court thus ordered Rodriguez to serve his original illegal sentence, not a lesser sentence. That sentence was also illegal because it did not comply with K.S.A. 22-3717(d)(1)(G), so the district court had jurisdiction to correct the illegal sentence under K.S.A. 22-3504(1). The district court did not err.

Rodriguez argues that "it is also possible to interpret the phrase 'any lesser sentence' to mean a sentence that is less than is required by statute." This issue requires statutory interpretation, which is a question of law over which this court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). K.S.A. 2015 Supp. 22-3716(b)(3)(B)(iii) permits a district court to: "revoke the probation . . . and *require the defendant to serve the sentence imposed, or any lesser sentence*, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed." (Emphasis added.) The phrase "any lesser sentence" must be read in context to determine what the sentence would be "lesser" than. The plain language compels the conclusion that it is lesser than "the sentence imposed," as that is the phrase directly preceding. See *Ballard*, 289 Kan. at 1006 (when statutory language is plain and ambiguous, courts may not read into statute language not found there). The only reference in that statute to the sentence that might originally have been imposed is in the context of a suspension of a sentence. Rodriguez' interpretation of K.S.A. 2015 Supp. 22-3716(b) lacks merit and has previously been foreclosed by this court.

Further, Rodriguez argues that *Lobmeyer* is factually distinguishable because in that case, the district court specifically stated that it was not reducing the postrelease supervision period, unlike the district court here. This court finds that to be a distinction without a difference, as the court in fact did not reduce the postrelease supervision period, despite its lack of an announcement.

6

Finally, Rodriguez argues that this case is similar to *State v. McKnight*, 292 Kan. 776, 257 P.3d 339 (2011). McKnight pled no contest to a drug charge and received a legal sentence that was suspended in favor of probation. The court subsequently revoked McKnight's probation and issued a modified sentence that omitted postrelease supervision based on a mistake of law. The State later moved the court to correct what it argued was an illegal sentence. Our Supreme Court held that the modified sentence was legally imposed, even though based on a mistake of law and, therefore, the district court lacked jurisdiction to subsequently modify the sentence. 292 Kan. at 783.

*McKnight* is distinguishable from Rodriguez' case for two reasons: (1) the original sentence in that case was legally imposed and (2) the modified sentence was both legal and a lesser sentence than McKnight's original sentence. Here, Rodriguez' original sentence was illegal because it did not comport with the punishment mandated by K.S.A. 22-3717(d)(1)(G) and, therefore, the subsequent imposition of that same sentence was also illegal. Because the district court may correct an illegal sentence at any time under K.S.A. 22-3504(1), the district court did not err in doing so in this case.

*Constitutional claim*

Next, Rodriguez argues that imposition of lifetime postrelease supervision constitutes cruel and unusual punishment in violation of the Eighth Amendment and § 9 of the Kansas Constitution Bill of Rights. The State contends that the punishment is not unconstitutional. The constitutionality of a sentencing statute is a question of law subject to unlimited appellate review. *State v. Hilt*, 299 Kan. 176, 202, 322 P.3d 367 (2014).

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008). Due to the separation of powers principle, "if there is any reasonable way to construe a statute as constitutional, courts have the duty to do so by resolving all doubts

in favor of constitutionality." *State v. Mossman*, 294 Kan. 901, 906-07, 281 P.3d 153 (2012) (citing *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 [2009]).

When a defendant challenges his or her sentence as cruel and unusual, appellate courts use a bifurcated standard of review:  "All of the evidence is reviewed, but not reweighed, to determine whether it is sufficient to support the district court's factual findings, but the legal conclusions that the district court draws from those facts are reviewed de novo." *State v. Ross*, 295 Kan. 424, 425-26, 284 P.3d 309 (2012).

A. *Section 9 of the Kansas Constitution Bill of Rights*

Kansas courts consider three factors to determine whether a sentence is cruel or unusual in violation of § 9 of the Kansas Constitution Bill of Rights. See *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). The *Freeman* factors are as follows:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
>
> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and
>
> "(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

No single factor is controlling. Appellate courts consider the factors collectively, but one factor may "weigh so heavily that it directs the final conclusion." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

Analysis under the first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender, with particular regard to the degree of danger presented to society. *Ross*, 295 Kan. at 426. The considerations under this factor are "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. In addition, "[t]his analysis may consider the offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history of the offender, and the offender's propensity for violence." *Ross*, 295 Kan. at 429.

Rodriguez included the following facts in his brief: (1) his criminal history score was A because of several misdemeanors—he had no felonies or sex convictions at the time of sentencing; (2) he originally was released to the community on probation; (3) the State did not present evidence that Rodriguez used a weapon; and (4) Rodriguez did not put the victim in a position where she could have died. Only the first two facts were included in Rodriguez' objection to lifetime postrelease supervision before the district court.

Here, the district court made no findings regarding these facts to aid this court in its review of the *Freeman* factors. The district court merely stated that "based on the facts of this case, that the standard of lifetime postrelease supervision is not unconstitutional." The court did not address the *Freeman* factors, any of the specifics of the incident, or any of the potentially mitigating arguments Rodriguez raised in his motion or at the hearing. Appellate courts do not make factual findings but are limited to reviewing those made by district courts. *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010). In the absence of any factual findings, this court does not have the necessary factual basis upon which to analyze whether Rodriguez' sentence is unconstitutional under *Freeman*. See *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009).

Supreme Court Rule 165 (2015 Kan. Ct. R. Annot. 257) requires the district court to make adequate findings of fact and conclusions of law on matters submitted to it without a jury. In *Seward*, our Supreme Court held that the responsibility for a lack of adequate findings and conclusions regarding the *Freeman* factors is shared between the district judge, the defendant, and the defense counsel. *Seward*, 289 Kan. at 720. While the claim that lifetime postrelease supervision constituted cruel or unusual punishment was relatively new at the time of *Seward*, the court stated:

> "In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing a motion invoking the judge's duty under Rule 165, if necessary." 289 Kan. at 721.

Appellate courts have followed *Seward*'s warning and declined to review constitutional challenges to sentencing statutes when the litigant failed to ensure the district court made adequate findings and conclusions on the *Freeman* factors to ensure a sufficient record for review. See, *e.g.*, *State v. Reed*, 300 Kan. 494, 513, 332 P.3d 172 (2014) ("[T]his court has consistently declined to address a defendant's appellate argument regarding cruel and/or unusual punishment when the defendant has failed to develop the record below."), *cert. denied* 135 S. Ct. 1566 (2015); *Reed*, 50 Kan. App. 2d at 1138-39 (defendant's failure to ensure the district court made adequate findings and conclusions on *Freeman* challenge foreclosed this court's review); *State v. Beck*, No. 109,657, 2014 WL 2871322, at *2-3 (Kan. App. 2014) (unpublished opinion) (where "the district court made no factual findings in relation to Beck's specific case," appellate court held "it is impossible for this court to review Beck's case-specific challenges to the constitutionality of lifetime postrelease supervision, and these claims on appeal must be dismissed"), *rev. denied* 302 Kan. 1012 (2015).

Rodriguez did not object to the inadequacy of the district court's findings or attempt to preserve an adequate record for review. Under *Seward*, we decline to review Rodriguez' case-specific claims that his sentence of lifetime postrelease supervision is unconstitutional and therefore affirm the district court regarding Rodriguez' constitutional claim under § 9 of the Kansas Constitution Bill of Rights.

B. *Eighth Amendment to the United States Constitution*

Rodriguez also argues that imposition of lifetime postrelease supervision is unconstitutional as cruel and unusual punishment under the Eighth Amendment, as applied to the states through the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has found that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

There are two types of proportionality challenges under the Eighth Amendment: (1) a case-specific challenge that the sentence is disproportionate "given all the circumstances in a particular case," *Graham*, 560 U.S. at 59; and (2) a categorical challenge "that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender." *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir. 2011). These challenges will be addressed in turn.

*Case-specific challenge*

In analyzing a case-specific Eighth Amendment challenge, the threshold inquiry requires the court to compare the gravity of the offense with the severity of the sentence

11

to determine if there is a gross disproportionality. In this analysis, courts may consider the defendant's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the defendant's conduct, the defendant's prior criminal history, and the defendant's propensity for violence. *Ross*, 295 Kan. at 428-29. Kansas courts have noted that the case-specific analysis of the *Freeman* factors applies to this initial determination. See, *e.g.*, *Mossman*, 294 Kan. at 917.

Rodriguez relies on his argument regarding the *Freeman* factors as his case-specific challenge under the Eighth Amendment. As was discussed above, the district court made no factual findings or conclusions of law regarding the *Freeman* factors and, therefore, this court cannot review the district court's findings or conclusions regarding gross disproportionality. Because Rodriguez does not meet the threshold inquiry, his case-specific challenge fails.

### *Categorical challenge*

Unlike a case-specific challenge, a categorical analysis under the Eighth Amendment does not require a review of factual findings made by the district court. *State v. Ruggles*, 297 Kan. 675, 679, 304 P.3d 338 (2013). Rather, because only questions of law are implicated, an appellate court has unlimited review over the legal questions. *Mossman*, 294 Kan. at 925.

The United States Supreme Court has identified three subcategories of categorical constitutional challenges: (1) those considering the nature of the offense, (2) those considering the characteristics of the offender, and (3) those that combine the first two subcategories. See *Graham*, 560 U.S. at 60-61. Rodriguez argues under the first category that the class of offenders at issue here are those who commit "a sex offense involving an offender and a child, aged at least fourteen but less than sixteen years old, where the offender engages in lewd fondling or touching of the child or the offender with the intent

12

to arouse or satisfy the sexual desires of either or both the child or offender, as set forth in K.S.A. 2007 Supp. [*sic*] 21-3503(a)(1)." However, our courts do not analyze the nature of the offense so narrowly. See *State v. Cameron*, 294 Kan. 884, 897, 281 P.3d 143 (2012) (no basis for considering class "that is any narrower than the crime of conviction—aggravated indecent solicitation of a child"). This court should therefore define the nature of the offense as indecent liberties with a child. *Reed*, 50 Kan. App. 2d at 1142 (defining the class as indecent solicitation of a child without refining any further where district court never determined specific facts related to the offense).

The Supreme Court in *Graham* outlined a two-prong test for courts to evaluate a categorical constitutional challenge:

> "The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citation omitted.]" 560 U.S. at 61.

First, Rodriguez argues that there is a national consensus against lifetime postrelease supervision for indecent liberties with a child. He argues that only Oklahoma and Kansas impose lifetime postrelease supervision without the possibility of release from supervision for first-time offenders. He contends that, under *Graham*, the fact that the practice is "exceedingly rare" indicates a national consensus against the practice. See 560 U.S. at 67. Rodriguez also argues that compared to other jurisdictions, Kansas' imposition on lifetime postrelease supervision is harsh.

13

In *Mossman*, our Supreme Court relied on *Williams*, which held that lifetime supervised release was not cruel and unusual punishment for the crime of child pornography. The Ninth Circuit in *Williams* held that "'objective indicia' suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common." 636 F.3d at 1233. Moreover, the *Mossman* court noted that "several other states have adopted lifetime postrelease supervision for many, if not all, sexually violent crimes." 294 Kan. at 930; see *Cameron*, 294 Kan. at 897 (same analysis).

In its analysis of the *Freeman* factors, the *Mossman* court surveyed state laws regarding lifetime postrelease supervision for sex offenses. It reported:

> "[I]t seems fair to say that less than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920.

Rodriguez attempts to distinguish his case from *Mossman* and *Cameron* by arguing that the nature of his offense is "much less harmful," by comparing the elements of the crimes and noting that *Cameron* involved a victim younger than age 14 and *Mossman* involved an offender who had sexual intercourse with the victim. But Kansas courts have held that the analysis applies to the crime of indecent liberties with a child as well. See, *e.g.*, *State v. Marion*, 50 Kan. App. 2d 802, 816, 333 P.3d 194 (2014) ("Marion's sentence of lifetime postrelease supervision for his conviction of indecent liberties with a child is not categorically disproportionate and, therefore, is not cruel and unusual punishment under the Eighth Amendment to the United States Constitution."); *State v. Alvarado*, No. 108,458, 2015 WL 1122927, at *12 (Kan. App.) (unpublished

14

opinion) ("Alvarado cannot show that the Kansas Supreme Court's rulings on this subject do not apply to his crime of indecent liberties with a child. By applying the same analysis and reaching the same conclusions in *Mossman*, *Cameron*, and *Williams*, cases involving different sex crimes, the Kansas Supreme Court suggested it would reject a challenge to the imposition of lifetime postrelease supervision regardless of the sex crime involved."), *rev. denied* 302 Kan. 1012 (2015); see also *Reed*, 50 Kan. App. 2d at 1144 ("Because Kansas considers indecent solicitation of a child to be a sexually violent offense, Reed's crime of conviction falls squarely into this analysis."). The Kansas Supreme Court has consistently held that there is no consensus against lifetime postrelease supervision for violent sex offenses, and Rodriguez provides no reason for this court to hold otherwise now.

Under the second prong, this court must exercise its independent judgment to determine whether lifetime postrelease supervision violates the Eighth Amendment. *Graham*, 560 U.S. at 61. This step requires consideration of the culpability of the offender in light of their crimes and characteristics, and the severity of the punishment in question. Included in this inquiry is an examination of "whether the challenged sentencing practice serves legitimate penological goals." 560 U.S. at 67-68. Legitimate penological goals include retribution, deterrence, incapacitation, and rehabilitation. 560 U.S. at 71.

Rodriguez argues that lifetime postrelease supervision for his crime does not serve any of the penological goals addressed by *Graham*. He contends that the goal of retribution is not served because lifetime postrelease supervision is not related to his personal level of culpability. Specifically, Rodriguez notes that unlike other offenses for which the constitutionality of the sentence has been upheld, indecent liberties with a child does not require sexual penetration of the victim, nor does it involve a victim under the age of 14 years. Second, Rodriguez argues that the sentence does not meet the goal of deterrence because an offender's criminal history already serves to deter him or her from

15

committing additional crimes. Third, he argues that incapacitation does not justify lifetime postrelease supervision because by the time an offender is subject to postrelease supervision, he or she has already served the prison term, and because it applies too broadly to all sexual offenders without determining the risk that the offender will reoffend. Finally, Rodriguez argues that the sentence does not meet the goal of rehabilitation because postrelease supervision here continues for the offender's lifetime regardless of how much he or she ages or improves his or her moral character.

Kansas courts have previously considered whether lifetime postrelease supervision for sex offenders serves legitimate penological goals. In *Mossman*, our Supreme Court again looked to *Williams*, which held that the goals of rehabilitation and incapacitation "are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again." 636 F.3d at 1234. The court also held that "[s]upervised release can further the end of rehabilitating sex offenders" and that "supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children." 636 F.3d at 1234.

*Mossman* applied *Williams*' reasoning to lifetime postrelease supervision for the crime of aggravated indecent liberties with a child. *Mossman*, 294 Kan. at 930. The same reasoning applies to other sexual crimes against a child. See *e.g.*, *Reed*, 50 Kan. App. 2d at 1145 (lifetime postrelease supervision for indecent solicitation with a child "serves the valid penological objectives of deterring such conduct and in incapacitating and rehabilitating the offender").

This court must follow the guidance of our Supreme Court. Rodriguez' sentence is not categorically disproportionate and, therefore, is not cruel and unusual punishment in violation of the Eighth Amendment.

16

C. *Application of* State v. Proctor

Finally, Rodriguez argues that this court should find lifetime postrelease supervision inapplicable to him because of similarities between his case and *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013) (unpublished opinion). In *Proctor*, a panel of this court held that lifetime postrelease supervision was unconstitutional as applied to the defendant, a victim of sexual abuse, under both the Eighth Amendment and § 9 of the Kansas Constitution Bill of Rights. 2013 WL 6726286, at *1.

Rodriguez argues that, like in *Proctor*, the district court originally imposed only probation, which sentence *Proctor* held is "difficult to meld with the harshest component of lifetime postrelease supervision." 2013 WL 6726286, at *4. Rodriguez also argues that the potential for life imprisonment comes not from the current conviction but for any future conviction he may receive in the future. But at the time of *Proctor*, life imprisonment upon the conviction of a subsequent felony was mandatory. See K.S.A. 2009 Supp. 75-5217(c). Since then, the statute has been revised:  if an offender commits a new felony on lifetime postrelease supervision, the prisoner review board has discretion to decide the prison sentence. K.S.A. 2015 Supp. 75-5217. And in *Mossman*, our Supreme Court rejected attempts to focus on the potential consequences of violating lifetime postrelease supervision, finding that those consequences are distinct from the question of disproportionality. 294 Kan. at 913 ("[A] comparison of proportionality cannot be based solely on the length of postrelease supervision.").

The similarities between the cases end there. The *Proctor* court heavily relied on the first *Freeman* factor, reviewing several factual findings made by the district court: Proctor's young age, lack of criminal record, and lack of evidence the defendant was a "serial sex offender with a trail of victims"; and expert testimony that he would benefit from therapy and was not a likely future offender. 2013 WL 6726286, at *4-6. The

17

district court focused specifically on Proctor's history as a victim of sexual abuse in adolescence, which went untreated, and which distinguished Proctor's case from prior cases where the offenders "plainly were not replicating conduct that had been directed toward them." 2013 WL 6726286, at *5. Finally, the court specifically advised that the ruling was limited to "the facts of [that] case at the time of Proctor's sentencing and decides only the constitutionality of lifetime postrelease supervision as to Proctor alone." 2013 WL 6726286, at *1. Unlike in *Proctor*, the district court here made no factual findings in this case that this court could review for similarity with *Proctor*. Further, Rodriguez presented no evidence that his own character is similar to *Proctor*, such as his risk of recidivism, whether therapy would help him, or any other personal characteristics such as a history of sexual abuse. *Proctor* does not control here.

Rodriguez did not preserve his case-specific challenge to the constitutionality of lifetime postrelease supervision under either the Eighth Amendment or § 9 of the Kansas Constitution. His categorical challenge under the Eighth Amendment fails under established Kansas precedent.

Affirmed.