NOT DESIGNATED FOR PUBLICATION

No. 114,797

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM N. FISHBACK,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed December 2, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., STANDRIDGE, J., and HEBERT, S.J.

*Per Curiam*: William N. Fishback appeals the district court's decision to modify his postrelease supervision term from 24 months to lifetime following his conviction of indecent liberties with a child. Fishback first claims lifetime postrelease supervision is an illegal sentence in his case due to a conflict between K.S.A. 2015 Supp. 22-3717(d)(1)(G) and K.S.A. 2015 Supp. 22-3717(d)(1)(D). Second, Fishback claims that lifetime postrelease supervision constitutes cruel and/or unusual punishment. For the reasons stated herein, we reject both claims and affirm the district court's judgment.

1

On September 3, 2009, the State charged Fishback with one count of aggravated indecent liberties with a child. The complaint alleged that the crime was committed on June 14, 2009. On October 28, 2009, Fishback pled no contest to an amended charge of indecent liberties with a child, a severity level 5 person felony. On December 11, 2009, the district court sentenced Fishback to 32 months' imprisonment but granted probation with community corrections for 36 months. On May 23, 2011, the district court revoked Fishback's probation and ordered him to serve his underlying prison sentence.

Four years later, on May 28, 2015, the State filed a motion to correct illegal sentence. In the motion, the State contended that K.S.A. 22-3171(d)(1)(G) required a sentence of lifetime postrelease supervision for Fishback's conviction of indecent liberties with a child. At a hearing on July 22, 2015, Fishback argued that imposition of lifetime postrelease supervision would be cruel and unusual punishment. After hearing arguments of counsel, the district court granted the State's motion and resentenced Fishback to lifetime postrelease supervision. Fishback timely appealed.

On appeal, Fishback first claims that his lifetime postrelease supervision sentence is illegal. Specifically, he argues that K.S.A. 22-3717 was amended in 2013 and the amended statute applies to his pending case. As a result of the amendment, Fishback contends that K.S.A. 2015 Supp. 22-3717(d)(1)(D) and K.S.A. 2015 Supp. 22-3717(d)(1)(G) directly conflict. He argues that under the rule of lenity, his postrelease supervision term should be 24 months under K.S.A. 2015 Supp. 22-3717(d)(1)(D), rather than lifetime under K.S.A. 22-3717(d)(1)(G).

Interpretation of a sentencing statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Also, whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which the appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

Fishback's statutory argument recently was rejected by this court in *State v. Herrmann*, No. 114,887, 53 Kan. App. 2d ___, ___ P.3d ___ (*filed* November 18, 2016). In *Herrmann*, this court determined that K.S.A. 2015 Supp. 22-3717(d)(1)(D) only applies to persons convicted of a sexually violent crime after July 1, 1993, but before July 1, 2006. *Herrmann*, Syl. ¶ 5. This court further held that the 2013 amendments to K.S.A. 22-3717(d)(1)(D) do not alter the requirement in K.S.A. 22-3717(d)(1)(G) that a person convicted of a sexually violent crime after July 1, 2006, receive lifetime postrelease supervision. *Herrmann*, Syl. ¶ 4. We adopt this court's reasoning in *Herrmann* and apply that reasoning to the facts herein. Thus, we conclude that on the date Fishback's crime was committed, K.S.A. 22-3717(d)(1)(G) required a sentence of lifetime postrelease supervision for a conviction of indecent liberties with a child and the statutory amendments have not altered this result.

Next, Fishback contends that lifetime postrelease supervision is cruel and/or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. When reviewing whether a sentence is cruel or unusual under the Kansas and United States Constitutions, appellate courts review the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015).

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008). "[I]f there is any reasonable way to construe a statute as constitutional, courts have the duty to do so by resolving all doubts in favor of constitutionality." *State v. Mossman*, 294 Kan. 901, 906-07, 281 P.3d 153 (2012) (citing *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 [2009]). We will first address Fishback's challenge under the Kansas Constitution Bill of Rights and then his challenge under the Eighth Amendment.

3

Section 9 of the Kansas Constitution Bill of Rights prohibits the infliction of cruel or unusual punishment. In *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), our Supreme Court held that punishment may be constitutionally impermissible, although not cruel or unusual in its method, "if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." The *Freeman* court set forth three criteria for evaluating whether the length of a sentence offends the constitutional prohibition against cruel or unusual punishment:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
>
> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and
>
> "(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

Analysis under the first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender, with particular regard to the degree of danger present to society. *State v. Ross*, 295 Kan. 424, 426, 284 P.3d 309 (2012). The factors under this prong are "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008). Here, the district court made the following factual findings:

4

"In this case the defendant was originally arrested for a more serious charge and in fact was charged, it was, like, an amended charge. The State amended to indecent liberties from the aggravated indecent liberties at the time of the plea, and also acquiesced in the departure so Mr. Fishback got a significant benefit at the time of the plea and sentencing in this case, but with respect to the particular individual, this was a girl that was basically 14 and Mr. Fishback was 26 and that his conduct—[i]f he didn't know any better he should have known better and it appears that he put his own desires and needs above the morals of society and what was best for his victim so I do not find that it's inappropriate for lifetime post release and therefore, grant the motion. I find it's an illegal sentence and impose lifetime post release."

On appeal, Fishback does not challenge the district court's factual findings. Rather, he argues that his crime should not be considered violent because the State did not present evidence that Fishback used a weapon, kidnapped his victim, or put the victim in a position where she could have died. We note that our Supreme Court has held that the legislature is justified in categorizing indecent solicitation as a "sexually violent crime" even where there is no evidence of physical force because of the State's vital interest in protecting children from being victimized by sexual crime. See *Mossman*, 294 Kan. at 909. If the crime of indecent solicitation does not require evidence of physical force to be categorized as a sexually violent crime, it follows that indecent liberties with a child does not require evidence of physical force to be categorized as a sexually violent crime.

Fishback also notes that this is the first time he has been convicted of a sexual offense. But in the absence of any significant findings about Fishback's character, his lack of sex offenses in his criminal history alone does not indicate that the punishment is unconstitutional. See *State v. Miller*, 297 Kan. 516, 521, 304 P.3d 1221 (2013) ("The first *Freeman* factor relates more to the danger posed to society than to sympathetic aspects of defendant's circumstances."). The district court properly considered the facts that Fishback was 26 years old, the victim was 14 years old, and Fishback put his own desires and needs above the morals of society and what was best for his victim. Despite the

brevity of the district court's findings, we conclude that the first *Freeman* factor weighs in favor of imposing lifetime postrelease supervision in Fishback's case.

The second *Freeman* factor requires comparing a challenged punishment with punishments imposed in the same jurisdiction for more serious offenses. 223 Kan. at 367. Here, the district court stated:

> "With respect to the imposition of a lifetime post release in a case like this as compared to some other charges that might be considered more serious the sex offenses are distinguishable because of the likelihood that people would reoffend, are more likely to reoffend as opposed to such violent crimes that do carry larger underlying sentences and the appellate courts pretty much resolved that, too."

Fishback argues he would have received a less severe postrelease supervision sentence had he committed second-degree murder. Citing the United States Supreme Court's decision in *Kennedy v. Louisiana*, 554 U.S. 407, 412, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008), Fishback argues that forcible child rape is a less serious crime than murder; and unlike the case in rape, there is no possibility of victim recovery from murder. Fishback cites additional offenses that he contends are "more serious" than indecent liberties with a child but carry 36-month postrelease supervision terms: aggravated kidnapping, K.S.A. 21-3421 (severity level 1 person felony); aggravated trafficking, K.S.A. 21-3447 (severity level 1 person felony); electronic solicitation of a child, K.S.A. 2009 Supp. 21-3523(a)(2) (severity level 1 person felony); furtherance of terrorism or illegal use of weapons of mass destruction, K.S.A. 21-3451 (severity level 1 person felony); manufacture of controlled substances, K.S.A. 2009 Supp. 21-36a03 (drug severity level 1 felony); human trafficking, K.S.A. 21-3446 (severity level 2 person felony); and voluntary manslaughter, K.S.A. 21-3403 (severity level 3 person felony).

Our Supreme Court previously has rejected arguments similar to Fishback's. See *Mossman*, 294 Kan. at 912-13; *State v. Cameron*, 294 Kan. 884, 892-93, 281 P.3d 143

6

(2012). As to the second *Freeman* factor, our Supreme Court has rejected arguments that focus only on the length of postrelease supervision without taking into consideration the total length of the sentence, including incarceration. See *Mossman*, 294 Kan. at 912-13; *Cameron*, 294 Kan. at 892-93. We conclude the district court did not err in determining that a term of lifetime postrelease supervision is not grossly disproportionate to the sentence imposed for other arguably more severe offenses in Kansas.

The third *Freeman* factor requires a comparison of the sentence imposed with punishments in other jurisdictions for the same offense. 223 Kan. at 367. On this factor, the district court simply noted that Kansas appellate courts have consistently ruled in favor of lifetime postrelease supervision.

On appeal, Fishback notes that only five states impose lifetime postrelease supervision for the offense of indecent liberties with a child. He also notes that 13 states impose mandatory lifetime postrelease supervision, but those states do not apply it to sex offenses. Our Supreme Court previously rejected similar arguments in *Mossman*:

> "[I]t seems fair to say that less than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920.

In sum, each of the *Freeman* factors weighs in favor of imposing lifetime postrelease supervision for Fishback's conviction of indecent liberties with a child. Lifetime postrelease supervision is not so disproportionate to Fishback's crime that it shocks the conscience or offends fundamental notions of human dignity. See *Freeman*,

7

223 Kan. at 367. Substantial competent evidence supports the district court's conclusion that lifetime postrelease supervision for Fishback's conviction of indecent liberties with a child is constitutional under § 9 of the Kansas Constitution Bill of Rights.

EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Fishback also argues that the imposition of lifetime postrelease supervision is unconstitutional as cruel and unusual punishment under the Eighth Amendment, as applied to the states through the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has found that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

There are two types of proportionality challenges under the Eighth Amendment: (1) a case-specific challenge that the sentence is disproportionate "given all the circumstances in a particular case," *Graham*, 560 U.S. at 59; and (2) a categorical challenge "that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender." *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir. 2011).

*Case-specific challenge*

In analyzing a case-specific Eighth Amendment challenge, the threshold inquiry requires the court to compare the gravity of the offense with the severity of the sentence to determine if there is a gross disproportionality. In this analysis, courts may consider the defendant's mental state and motive in committing the crime, the actual harm caused

to the victim or to society by the defendant's conduct, the defendant's prior criminal history, and the defendant's propensity for violence. *Ross*, 295 Kan. at 428-29.

Fishback's case-specific challenge is factual in nature and therefore may not be brought for the first time on appeal. See *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010). In any case, Fishback relies on his argument regarding the *Freeman* factors as his case-specific challenge under the Eighth Amendment. As was discussed above, there is substantial competent evidence to support the district court's findings that Fishback's sentence of lifetime postrelease supervision was not grossly disproportionate. Thus, Fishback's case-specific challenge under the Eighth Amendment fails.

*Categorical challenge*

Unlike a case-specific challenge, a categorical analysis under the Eighth Amendment does not require a review of factual findings made by the district court. See *State v. Ruggles*, 297 Kan. 675, 679, 304 P.3d 338 (2013). Rather, because only questions of law are implicated, an appellate court has unlimited review over the legal questions. *Mossman*, 294 Kan. at 925.

The United States Supreme Court in *Graham* outlined a two-prong test for courts to evaluate a categorical constitutional challenge:

> "The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citation omitted.]" 560 U.S. at 61.

9

First, Fishback argues that there is a national consensus against lifetime postrelease supervision for indecent liberties with a child. He simply reiterates that only five states impose mandatory lifetime postrelease supervision for this offense. In *Mossman*, our Supreme Court relied on *Williams*, which held that lifetime supervised release was not cruel and unusual punishment for the crime of child pornography. The Ninth Circuit in *Williams* held that "'objective indicia' suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common." 636 F.3d at 1233. Moreover, the *Mossman* court noted that "several other states have adopted lifetime postrelease supervision for many, if not all, sexually violent crimes." 294 Kan. at 930; see *Cameron*, 294 Kan. at 897 (same analysis).

Under the second prong, this court must exercise its independent judgment to determine whether lifetime postrelease supervision violates the Eighth Amendment. *Graham*, 560 U.S. at 61. This step requires consideration of the culpability of offenders in light of their crimes and characteristics, and the severity of the punishment in question. Included in this inquiry is an examination of "whether the challenged sentencing practice serves legitimate penological goals." 560 U.S. at 67-68. Legitimate penological goals include retribution, deterrence, incapacitation, and rehabilitation. 560 U.S. at 71.

Kansas courts previously have considered whether lifetime postrelease supervision for sex offenders serves legitimate penological goals. In *Mossman*, our Supreme Court again looked to *Williams*, which held that the goals of rehabilitation and incapacitation "are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again." 636 F.3d at 1234. The *Williams* court also held that "[s]upervised release can further the end of rehabilitating sex offenders" and that "supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children." 636 F.3d at 1234.

*Mossman* applied *Williams'* reasoning to lifetime postrelease supervision for the crime of aggravated indecent liberties with a child. *Mossman*, 294 Kan. at 930. The same reasoning applies to indecent liberties with a child. See *State v. Reed*, 50 Kan. App. 2d 1133, 1145, 336 P.3d 912 (2014) (lifetime postrelease supervision for indecent liberties with a child "serves the valid penological objectives of deterring such conduct and in incapacitating and rehabilitating the offender"), *rev. denied* 302 Kan. 1019 (2015). Following the guidance of prior appellate decisions, we conclude that Fishback's sentence is not categorically disproportionate under the Eighth Amendment.

*Application of* State v. Proctor

Finally, Fishback argues that this court should find lifetime postrelease supervision inapplicable to him because of similarities between his case and *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1273 (2014). In *Proctor*, a panel of this court held that lifetime postrelease supervision was unconstitutional as applied to the defendant, a victim of sexual abuse, under both § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment of the United States Constitution. 2013 WL 6726286, at *1.

Fishback argues that, like in *Proctor*, the potential for life imprisonment comes not from the current conviction, but for any future conviction he may receive in the future. But at the time of *Proctor*, life imprisonment upon the conviction of a subsequent felony was mandatory. See K.S.A. 2009 Supp. 75-5217(c). Since then, the statute has been revised: if an offender commits a new felony on lifetime postrelease supervision, the prisoner review board has discretion to decide the prison sentence. K.S.A. 2015 Supp. 75-5217(c). Moreover, in *Mossman*, our Supreme Court rejected attempts to focus on the potential consequences of violating lifetime postrelease supervision, finding that those consequences are distinct from the question of disproportionality. 294 Kan. at 913 (comparison of proportionality is not based solely on length of postrelease supervision).

11

The *Proctor* court relied heavily on the first *Freeman* factor, reviewing several factual findings made by the district court: Proctor's young age, lack of criminal record, and lack of evidence the defendant was a "serial sex offender with a trail of victims"; and expert testimony that he would benefit from therapy and was not a likely future offender. 2013 WL 6726286, at *4-6. The district court focused specifically on Proctor's history as a victim of sexual abuse in adolescence, which went untreated, and which distinguished Proctor's case from prior cases where the offenders "plainly were not replicating conduct that had been directed toward them." 2013 WL 6726286, at *5. Finally, the court specifically advised that the ruling was limited to "the facts of [that] case at the time of Proctor's sentencing and decides only the constitutionality of lifetime postrelease supervision as to Proctor alone." 2013 WL 6726286, at *1.

Unlike in *Proctor*, Fishback presented no evidence that his own character is similar to the factors relied upon in *Proctor*, such as his risk of recidivism, whether therapy would help him, or any other personal characteristics such as a history of sexual abuse. *Proctor* does not control here. Thus, the district court did not err in rejecting Fishback's constitutional challenges to lifetime postrelease supervision.

Affirmed.

12