NOT DESIGNATED FOR PUBLICATION

No. 118,859

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY ALAN TAYLOR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed July 19, 2019. Affirmed.

*Jeffrey Alan Taylor*, pro se appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GARDNER, J., and WALKER, S.J.

PER CURIAM: Jeffrey Alan Taylor was charged with two counts of rape, two counts of aggravated sexual battery, and one count of criminal restraint. As part of a plea agreement, Taylor entered *Alford* pleas to two counts of aggravated sexual battery in exchange for the State's dismissal of the remaining counts. An *Alford* plea allows a defendant to plead guilty without admitting the facts of the offense or while maintaining his or her innocence in order to obtain a favorable plea deal. See *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Case*, 289 Kan. 457, 460, 213 P.3d 429 (2009).

1

The district court ultimately sentenced Taylor to 130 months in prison followed by lifetime postrelease supervision. On appeal, Taylor claims that the district court's decision to impose lifetime postrelease supervision is unconstitutional and that his sentence is illegal as a result of ineffective assistance of counsel.

A. *Lifetime postrelease supervision*

On appeal, Taylor argues the district court's decision to impose lifetime postrelease supervision constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. The State contends that Taylor's case-specific Eighth Amendment challenge and his § 9 challenge have not been properly preserved for our review. An appellate court exercises unlimited review over questions of preservation. *State v. Reed*, 306 Kan. 899, 902, 399 P.3d 865 (2017).

When a defendant challenges his or her sentence as cruel and unusual, appellate courts use a bifurcated standard of review: "All of the evidence is reviewed, but not reweighed, to determine whether it is sufficient to support the district court's factual findings, but the legal conclusions that the district court draws from those facts are reviewed de novo." *State v. Ross*, 295 Kan. 424, 425-26, 284 P.3d 309 (2012).

1. *Section 9 of the Kansas Constitution Bill of Rights*

Kansas courts consider three factors to determine whether a sentence is cruel or unusual in violation of § 9 of the Kansas Constitution Bill of Rights. See *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). The *Freeman* factors are as follows:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the

extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

No single factor is controlling. Appellate courts consider the factors collectively, but one factor may "weigh so heavily that it directs the final conclusion." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

Analysis under the first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender, with particular regard to the degree of danger presented to society. *Ross*, 295 Kan. at 426. The considerations under this factor are "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. In addition, "[t]his analysis may consider the offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history of the offender, and the offender's propensity for violence." *Ross*, 295 Kan. at 429.

With regard to this first *Freeman* factor, Taylor argues the following considerations presented to the district court at sentencing support a finding that lifetime postrelease supervision in his case is cruel or unusual in violation of § 9 of the Kansas Constitution Bill of Rights:

- he was innocent and only pleaded guilty because he recognized that he was facing up to 600 months in prison if convicted of the rape charges;

3

- there was no physical evidence to show the allegations in the probable cause affidavit were true;
- his friends and family have supported him and did not believe the accusations;
- his plea and waiver of the preliminary hearing prevented the victim from having to testify;
- most of his criminal history resulted from alcohol and run-ins with the police, and most of the violent offenses were remote in time;
- if he had a propensity for sexual battery, it would have shown up a long time ago;
- he had been a "model prisoner" since his arrest;
- he needed to be able to support his family in the future; and
- he had his own health problems and would need a liver transplant in the next five years, which would make him a liability to the state.

Here, the district court made no findings regarding these facts to aid this court in its review of the *Freeman* factors. The district court merely stated that "I think under the law that [lifetime postrelease supervision] is what is called for. I will go over your appeal rights with you in a little bit, [your attorney] will go over that in more detail, and you can certainly appeal the Court's imposition of the lifetime supervision." The court did not address the *Freeman* factors, any of the specifics of the incident, or any of the potentially mitigating arguments Taylor raised in his motion or at the hearing. Appellate courts do not make factual findings but are limited to reviewing those made by district courts. *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010). In the absence of any factual findings, this court does not have the necessary factual basis upon which to analyze whether Taylor's sentence is unconstitutional under *Freeman*. See *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009), *disapproved of on other grounds by State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015).

4

Supreme Court Rule 165 (2019 Kan. S. Ct. R. 221) requires the district court to make adequate findings of fact and conclusions of law on matters submitted to it without a jury. In *Seward*, our Supreme Court held that the responsibility for a lack of adequate findings and conclusions regarding the *Freeman* factors is shared between the district judge, the defendant, and the defense counsel. *Seward*, 289 Kan. at 720. While the claim that lifetime postrelease supervision constituted cruel or unusual punishment was relatively new at the time of *Seward*, the court stated:

> "In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." 289 Kan. at 721.

Appellate courts have followed the warning in *Seward* and declined to review constitutional challenges to sentencing statutes when the litigant failed to ensure the district court made adequate findings and conclusions on the *Freeman* factors to ensure a sufficient record for review. See, e.g., *State v. Reed*, 300 Kan. 494, 513, 332 P.3d 172 (2014) ("[T]his court has consistently declined to address a defendant's appellate argument regarding cruel and/or unusual punishment when the defendant has failed to develop the record below."); *State v. Reed*, 50 Kan. App. 2d 1133, 1138-39, 336 P.3d 912 (2014) (defendant's failure to ensure district court made adequate findings and conclusions on *Freeman* challenge foreclosed this court's review); *State v. Beck*, No. 109,657, 2014 WL 2871322, at *2-3 (Kan. App. 2014) (unpublished opinion) (where "the district court made no factual findings in relation to Beck's specific case," appellate court held "it is impossible for this court to review Beck's case-specific challenges to the constitutionality of lifetime postrelease supervision, and these claims on appeal must be dismissed").

Taylor did not object to the inadequacy of the district court's findings or attempt to preserve an adequate record for review. Under *Seward*, we decline to review Taylor's case-specific claims that his sentence of lifetime postrelease supervision is unconstitutional under § 9 of the Kansas Constitution Bill of Rights.

2. *Eighth Amendment to the United States Constitution*

Although somewhat difficult to discern from his brief, it appears Taylor also argues that imposition of lifetime postrelease supervision is unconstitutional as cruel and unusual punishment under the Eighth Amendment, as applied to the states through the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has found that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

There are two types of proportionality challenges under the Eighth Amendment: (1) a case-specific challenge that the sentence is disproportionate "given all the circumstances in a particular case," *Graham*, 560 U.S. at 59; and (2) a categorical challenge "that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender." *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir. 2011). These challenges will be addressed in turn.

a. *Case-specific challenge*

In analyzing a case-specific Eighth Amendment challenge, the threshold inquiry requires the court to compare the gravity of the offense with the severity of the sentence

to determine if there is a gross disproportionality. In this analysis, courts may consider the defendant's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the defendant's conduct, the defendant's prior criminal history, and the defendant's propensity for violence. *Ross*, 295 Kan. at 428-29. Kansas courts have noted that the case-specific analysis of the *Freeman* factors applies to this initial determination. See, e.g., *State v. Mossman*, 294 Kan. 901, 908, 281 P.3d 153 (2012).

Taylor relies on his argument regarding the *Freeman* factors as his case-specific challenge under the Eighth Amendment. As was discussed above, the district court made no factual findings or conclusions of law regarding the Freeman factors and, therefore, this court cannot review the district court's findings or conclusions regarding gross disproportionality. Because Taylor does not meet the threshold inquiry, his case-specific challenge fails.

b. *Categorical challenge*

Unlike a case-specific challenge, a categorical analysis under the Eighth Amendment does not require a review of factual findings made by the district court. *State v. Ruggles*, 297 Kan. 675, 679, 304 P.3d 338 (2013). Rather, because only questions of law are implicated, an appellate court has unlimited review over the legal questions. *Mossman*, 294 Kan. at 925.

The United States Supreme Court has identified two subcategories of categorical constitutional challenges: (1) those considering the nature of the offense and (2) those considering the characteristics of the offender. *Graham*, 560 U.S. at 60-61. It appears from his brief that Taylor's argument relies on the first category: the class of offenders who commit a sexually violent offense.

7

The Supreme Court in *Graham* outlined a two-part test for courts to evaluate a categorical constitutional challenge:

> "The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citations omitted.]" 560 U.S. at 61.

Here, Taylor argues that there is a national consensus against lifetime postrelease supervision for sexually violent offenders. He argues that only Oklahoma, Colorado, and Kansas impose lifetime postrelease supervision without the possibility of release from supervision for sexually violent offenders. He contends that, under *Graham*, the fact that the practice is exceedingly rare indicates a national consensus against the practice. See 560 U.S. at 67. Taylor also argues that compared to other jurisdictions, Kansas' imposition of lifetime postrelease supervision is harsh.

In *Mossman*, our Supreme Court relied on *Williams*, which held that lifetime supervised release was not cruel and unusual punishment for the crime of child pornography. *Mossman*, 294 Kan. at 930. The Ninth Circuit in *Williams* held that "'objective indicia' suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common." 636 F.3d at 1233. Moreover, the *Mossman* court noted that "several other states have adopted lifetime postrelease supervision for many, if not all, sexually violent crimes." 294 Kan. at 930; see *State v. Cameron*, 294 Kan. 884, 897, 281 P.3d 143 (2012) (same analysis).

In its analysis of the *Freeman* factors, the *Mossman* court surveyed state laws regarding lifetime postrelease supervision for sex offenses. It reported:

8

"[I]t seems fair to say that less than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920.

The Kansas Supreme Court has consistently held that there is no consensus against lifetime postrelease supervision for violent sex offenses, and Taylor provides no reason for this court to hold otherwise now.

Under the second part of the *Graham* test, this court must exercise its independent judgment to determine whether lifetime postrelease supervision violates the Eighth Amendment. *Graham*, 560 U.S. at 61. This step requires consideration of the culpability of the offender in light of their crimes and characteristics, and the severity of the punishment in question. Included in this inquiry is an examination of "whether the challenged sentencing practice serves legitimate penological goals." 560 U.S. at 67-68. Legitimate penological goals include retribution, deterrence, incapacitation, and rehabilitation. 560 U.S. at 71.

Taylor argues that lifetime postrelease supervision for his crime does not serve any of the penological goals addressed by *Graham*. He claims that the goal of retribution is not served because lifetime postrelease supervision is not related to his personal level of culpability. Taylor also claims that the sentence does not meet the goal of deterrence because an offender's criminal history already serves to deter him or her from committing additional crimes. Taylor further claims that incapacitation does not justify lifetime postrelease supervision because by the time an offender is subject to postrelease supervision, he or she has already served the prison term, and because it applies too

9

broadly to all sexual offenders without determining the risk that the offender will reoffend. Finally, Taylor claims that the sentence does not meet the goal of rehabilitation because postrelease supervision here continues for the offender's lifetime regardless of how much he or she ages or improves his or her moral character.

Kansas courts have previously considered whether lifetime postrelease supervision for sex offenders serves legitimate penological goals. In *Mossman*, 294 Kan. at 930, our Supreme Court again looked to *Williams*, which held that the goals of rehabilitation and incapacitation "are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again." 636 F.3d at 1234. The court also held that "[s]upervised release can further the end of rehabilitating sex offenders" and that "supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children." *Williams*, 636 F.3d at 1234.

This court must follow the guidance of our Supreme Court. Taylor's sentence is not categorically disproportionate and, therefore, is not cruel and unusual punishment in violation of the Eighth Amendment.

B. *Illegal sentence arising from ineffective assistance of counsel*

Taylor contends that ineffective assistance of counsel, particularly at sentencing, led the district court to incorrectly calculate his criminal history score, which resulted in imposition of an illegal sentence. The State claims we should not reach the merits of Taylor's claim of illegal sentence because he failed to properly brief it. And even if this court reaches the merits, the State claims the sentence imposed by the district court was not illegal.

To succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, the defendant must show there is a reasonable probability the result would have been different but for counsel's errors. *State v. McDaniel*, 306 Kan. 595, 607, 395 P.3d 429 (2017).

When a defendant raises an ineffective assistance of trial counsel argument for the first time on appeal, Kansas appellate courts can dispose of that claim in one of three ways:

> "First, an appellate court may follow the general rule and decline to address the issue, leaving the defendant to pursue relief through a timely K.S.A. 60-1507 motion. See *State v. Levy*, 292 Kan. 379, 388-89, 253 P.3d 341 (2011). Second, the appellate court may remand to the district court for examination of the issue in further proceedings pursuant to *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). See *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014) ('The usual course of action is a request by appellate counsel for remand to district court for a hearing on the ineffective assistance claim.'). Finally, although rare, '"there are circumstances when no evidentiary record need be established, when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious," and an ineffectiveness claim can therefore be resolved' by an appellate court. 298 Kan. at 839 (quoting *Rowland v. State*, 289 Kan. 1076, 1084-85, 219 P.3d 1212 [2009]); see *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000) (remand would serve no purpose where assessment by trial court unnecessary because record on appeal sufficiently complete for appellate court to decide issue)." *State v. Reed*, 302 Kan. 227, 233-34, 352 P.3d 530 (2015).

We find the record on appeal in this case to be sufficient for us to review Taylor's claim. Here, Taylor claims defense counsel was deficient in failing to argue that his two prior convictions in Texas for assault on a public servant (listed as prior conviction numbers 39 and 40 in the presentence investigation report) did not have comparable

offenses in Kansas and, therefore, should not have been classified as felonies for purposes of criminal history. Notwithstanding his claim, Taylor readily acknowledges defense counsel lodged an objection to his criminal history score at the sentencing hearing. Taylor does not dispute that counsel adamantly advised him not to waive the challenge but that Taylor ignored that advice. Taylor also does not dispute that defense counsel requested a continuance but he opposed it and insisted on proceeding with sentencing that day. Based on these undisputed facts, we find no deficiency in counsel's performance and no merit to Taylor's claim of ineffective assistance of counsel.

Affirmed.